UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 19-22629-CIV-MORENO

DIEGO TRINIDAD,

        Plaintiff,

vs.

EXPEDIA GROUP, INC., HOTELS.COM
L.P., HOTELS.COM GP, LLC, and ORBITZ,
LLC,

        Defendants.
_____/

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Plaintiff, Diego Trinidad, filed this case asserting that Defendants, the Expedia Group, Inc. *et al.*, unlawfully trafficked in confiscated property that was owned by his parents on Cuba's famed Varadero Beach. Defendants moved for summary judgment asserting that the undisputed record evidence is insufficient to establish the elements of the Helms-Burton cause of action, codified at 22 U.S.C. § 6082(a)(1)(A). The Court agrees that the record evidence is insufficient to show that Trinidad's property is on a location where Defendants are trafficking a hotel. Moreover, the Court finds that the Trinidad property does not qualify as "property" because it is residential and does not meet the 22 U.S.C. § 6023(12)(B) definition. Because the Court finds that Trinidad cannot make out a claim to show ownership, the Court need not address whether the Expedia Defendants unlawfully trafficked in the property.[1] Summary judgment is granted.

---

[1] In so holding, the Court is aware that Defendants filed a notice indicating they discovered additional evidence, which affects the trafficking analysis at summary judgment.

THIS CAUSE came before the Court upon Defendants' Motion for Summary Judgment (**D.E. 211**), filed on **June 28, 2024**. After careful consideration of the motion, relevant authority, and for the reasons set forth in this Order, the Court finds there are no genuine issues of material fact and GRANTS the Defendants' Motion for Summary Judgment as the record evidence is not sufficient to establish ownership.

## I. FACTUAL BACKGROUND

Plaintiff, Diego Trinidad, alleges that he and his predecessors are the owners of a claim to a beachfront home in Varadero, Cuba.[2] Plaintiff's parents, Diego Cosme Trinidad Valdes, and his wife, Estela Esperanza Garcia-Mesana Trinidad, owned the property at issue in this case. The couple left Cuba and later divorced in the United States in 1978. His father died intestate in 1980 leaving four heirs, including the Plaintiff. Neither the couple's divorce judgment nor the documents administering his father's estate (filed in 1998) mention the property. Indeed, the divorce judgment only mentions the family home, some credit card debts, and the petition administering the estate only references some trademark rights.

In response to summary judgment, Plaintiff claims he inherited a 12.5% interest via intestate succession when his father died in 1980 and 2/3 of his mother's 50% share of the property when she died in 2008. This Court, however, already held in its September 13, 2023 Order that Plaintiff could not state a claim for the 2/3 interest he inherited from his mother because she died after the statutory cut-off date. Therefore, this Court only evaluates Plaintiff's claim to ¼ of his father's 50% share, or 12.5% of the property.

---

[2] Plaintiff's Statement of Material Facts fails to comply with the Local Rules in several ways. First, Plaintiff does not respond to the Defendants' Statement of Material Facts on a paragraph by paragraph basis. He often lumps together his responses to various paragraphs into one paragraph. He does not separate out additional facts, but instead weaves them into his opposing statement of material facts. His Statement of Facts also exceeds the page limitations. *See* S.D. Fla. L.R. 56.1. Despite the failure to comply with the Local Rule, the Court will nevertheless identify the Plaintiff's additional facts to adjudicate the motion for summary judgment.

To support his claim that his father owned the property, Plaintiff points to his Exhibit C, a certificate from the Cuban Northern Property Registry in Cardenas certifying that Diego Cosme Jose Trinidad y Valdes had recorded ownership of land bordered by 28th and 29th Streets. The certificate reads

> It borders: at the front with the road or street called Malecon, which in turn faces the sea; on the right with the street or road that bears the name of number twenty-eight; on the left with another street or road that bears the name twenty-nine; and at the back with the rest of the property from which it was separated.

(Exh. C, Defendant's Statement of Material Facts, Transl. of Cardenas Property Certificate at 1, 3). The location evidenced by the Plaintiff's certificate is not the location referenced in the Fourth Amended Complaint, which states that the Trinidad Property was located between 72nd and 73rd street, the location of the Occidental Arenas Blancas Hotel. Plaintiff, however, has not produced a notarial deed or other public documents to evidence his ownership of the property between 72nd and 73rd street. Indeed, at his deposition, Trinidad testifies that the location of the property is at the end of 69th street where only the Barcelo Solymar Hotel stands. (Plaintiff Depo at 72-73; 191). There is no record evidence, therefore, to show that there is a hotel operating at the location between 28th and 29th street as documented by the certificate from the Cuban Northern Property Registry. The record evidence establishes that the two hotels that Plaintiff claims are located on the Trinidad Property, the Solymar Hotel (at his deposition) and the Occidental Arenas Blancas Hotel (in the operative complaint), are actually at other locations. And there is no other deed or document to show that Plaintiff inherited the property where those hotels currently sit.

Rather than provide the Court with property records, Plaintiff provides the Court with a video of a relative visiting the property, where the party comments on how the property was once

3

owned by Plaintiff's parents. Plaintiff also provides the Court with a hand-drawn map to show the location of the Trinidad property. *See* Exh. Z, Plaintiff's Statement of Material Facts. It is unclear who drew the map. In any event, the map shows a property located between 68th and 69th street, and Plaintiff's response to summary judgment now says the property is at 71st street. In any event, both the video and the map are inadmissible hearsay under Federal Rule of Evidence 801(c), out-of-court statements being proffered for the truth of the matter asserted – that is proof of the location of the Trinidad property. While inadmissible hearsay may sometimes be considered by a court when ruling on summary judgment, it cannot be used when that hearsay cannot be reduced to admissible form at trial. *Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996). As for the map, Plaintiff provides no evidence of its authenticity, including who drew the map. *See* Fed. R. Evid. 901. Therefore, the map is inadmissible hearsay and cannot be reduced to admissible form. As for the video, Plaintiff identifies the person who took the video, but the video itself constitutes hearsay, it is not authenticated, and it also cannot be presented in admissible form.[3]

## II.   LEGAL STANDARD

Summary judgment is authorized where there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; the non-moving party must establish the essential

---

[3] Because the factual record is deficient to show that Plaintiff owns the property that he claims is being trafficked by the operation of the Occidental or Solymar Hotels, the Court need not review the evidence of whether the property was confiscated by the Cuban government or trafficked by Defendants.

4

elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The non-movant must present more than a scintilla of evidence in support of the non-movant's position. A jury must be able reasonably to find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

### III. LEGAL ANALYSIS

*A. The Cuban Liberty and Democratic Solidarity Act*

In 1996, Congress passed the Cuban Liberty and Democratic Solidarity Act, known as the Helms-Burton Act, which provides a private cause of action for certain U.S. nationals against anyone who "traffics in property which was confiscated by the Cuban Government on or after January 1, 1959." 22 U.S.C. § 6082(a)(1)(A). The Act requires not only that Diego Trinidad own a claim to such property, but also that Defendants "traffic" in that specific confiscated "property." *Id.* The term "such property" refers to "'property which was confiscated by the Cuban Government.'" *Havana Docks Corp. v. Royal Caribbean Cruises, Ltd.*, __ F.4th__, 2024 WL 4537134, *1 (11th Cir. Oct. 22, 2024). The Act's definition of property expressly excludes "property used for residential purposes unless, as of March 12, 1996," (i) the claim to the property is certified under the International Claims Settlement Act of 1949 or (ii) the property is occupied by a Cuban Government or political party official. 22 U.S.C. § 6023(12)(B). Traffics includes "knowingly and intentionally" "engag[ing] in a commercial activity using or otherwise benefitting from confiscated property." 22 U.S.C. § 6023(13)(B).

To prevail on this claim, Plaintifff must prove that (1) he owns the claim to property confiscated by the Cuban Government, and (2) Defendants "trafficked" in that property. 22 U.S.C. § 6082(a)(1)(A). Defendants move for summary judgment asserting the record evidence

5

fails to establish the elements of the cause of action.

*1. Property*

To reiterate, the Act's definition of property expressly excludes "property used for residential purposes unless, as of March 12, 1996," (i) the claim to the property is certified under the International Claims Settlement Act of 1949 or (ii) the property is occupied by the Cuban government or political party official. 22 U.S.C. § 6023(12)(B).

Trinidad testified that the property was only used for a residential purpose. Trinidad Depo. at 80-83. It was not used for commercial purposes and the family never charged rent. *Id.* at 81-83. Therefore, the Trinidad property is not "property" under the Act unless, as of March 12, 1996, it was the subject of a claim certified under the International Claims Settlement Act or it was occupied by a Cuban official. Plaintiff's own allegations establish that it was "not the subject of a certified claim under Title V of the International Claims Settlement Act of 1949 (22 U.S.C. § 1643 *et seq.*)." Plaintiff's Fourth Amended Complaint (ECF 125 at ¶ 39). The record also does not show that the property was occupied by the Cuban government or a political party official. Plaintiff states that in the video, which the Court has found to be hearsay evidence, the unnamed caretaker of the home said the home was used by guests of the Cuban government after it was confiscated. There is no evidence identifying the guests, and certainly no evidence identifying a Cuban official as required by the Act. This evidence is insufficient for a reasonable jury to find in favor of the Plaintiff that the exception to the Act's residential property exclusion is met. Accordingly, the Plaintiff fails to show that the Trinidad property qualifies as property under the Act.

*2. Ownership*

The motion for summary judgment also argues that the record evidence fails to establish

6

that the Barcelo Solymar and the Occidental Arenas Blancas Hotel – the hotels on which Plaintiff alleges Defendants trafficked—are located on the Trinidad property. As noted, *supra*, Plaintiff provides the Court with a Certificate form the Cuban Northern Property Registry in Cardenas certifying that his parents recorded ownership of a specific parcel of land in the province of Matanzas. That certificate, however, describes property that is not where the Solymar and Occidental hotels sit. The hotels are at a different location than what is referenced in the certificate. Therefore, even if Plaintiff's parents owned the property described in the certificate, that property cannot be tied to the trafficking he is claiming in this case.

Plaintiff also relies on a hand-drawn map and video as evidence of the location of the Trinidad property. As noted, the map and video are inadmissible hearsay, and the Court cannot consider the map and the video on summary judgment unless they can be reduced to admissible form for trial. Because the Court finds neither are admissible at trial, the Court will not consider them. In any event, the map does not establish the location of the property as described in the Plaintiff's response to summary judgment. The map shows a property at 68th and 69th street, while the Plaintiff's response to summary judgment indicates the Trinidad property is on 71st street. The Fourth Amended Complaint states that the Occidental Hotel is on 72nd-73rd Street and the Plaintiff Solymar is at 69th Street. The inconclusiveness as to the location of the property coupled with the lack of property records requires this Court find the record insufficient to establish ownership, a required element of the cause of action from which a reasonable jury could find in his favor.

Without any other property records, the Plaintiff cannot meet this essential element of his case. The undisputed testimony of Defendants' Cuban law expert, Ambar Diaz, also establishes what would be considered a viable record for Plaintiff to show ownership of the property at the

time his parents owned it. Diaz testified that the Civil Code of 1889, which applied when Plaintiff's parents allegedly acquired the Trinidad property, mandated that all acts or contracts concerning the creation, transfer, acquisition, modification, and extinction of property interests on immovable property had to be proven by public document. Dec'l. of Ambar Diaz (ECF 212-2). Article 1216 of the Civil Code of 1889 defined public document as those authorized by a Notary or by a competent public official, with the formalities required by the Law. Only the certificate can meet this standard; the video and the hand-drawn map surely do not. And the certificate identifies a property at a location that is not where the hotels sit as shown by the record evidence. Accordingly, the Court finds that Plaintiff cannot establish that the property he claims his parents owned is where the Defendants trafficked the Barcelo Solymar and Occidental Hotels.[4]

Having found that Plaintiff cannot show the Trinidad property constitutes property under the Act and that the hotels the Defendants trafficked are on the Trinidad property, the Court grants summary judgment in favor of Defendants. The Court need not address whether Trinidad lawfully inherited an interest in the property, whether the Cuban government confiscated the property, and whether the Defendants trafficked the hotels.

DONE AND ORDERED in Chambers at Miami, Florida, this 31st of October 2024.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

---

[4] The Court again notes that Plaintiff disavowed at his deposition that the Trinidad property was at the location of the Occidental Hotel and said it was where the Solymar is located. Trinidad Depo. at 72-73.